# In The United States Court of Federal Claims

No. 11-541C
(Filed: August 21, 2015)

| | |
|---|---|
| NEW ORLEANS REGIONAL PHYSICIAN HOSPITAL ORGANIZATION, INC., d/b/a PEOPLES HEALTH NETWORK,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>THE UNITED STATES,<br><br>　　　　　　　Defendant. | Motion to compel; RCFC 37; Conferring in good faith; Discovery; Search protocol; E-discovery; Relevance of discovery, Retaking depositions; Attorney's fees pursuant to RCFC 37(a)(5)(C). |

Monica Ann Frois, New Orleans, La., for plaintiff.

Antonia Ramos Soares, Trial Attorney, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

OPINION and ORDER

　　　Plaintiff, New Orleans Regional Physician Hospital Organization, Inc., d/b/a Peoples Health Network (PHN or plaintiff), has filed a Motion to Compel (plaintiff's motion), pursuant to Rule 37 of the Rules of the United States Court of Federal Claims (RCFC), requesting that the court order defendant to redo its searches for responsive documents according to parameters to be agreed upon by the parties. Pl.'s 3d Mot. Compel (Pl.'s Mot.) 1, June 19, 2014, ECF No. 82. Plaintiff also requests that the court order the parties to reschedule the remaining depositions and permit plaintiff to retake the three previously completed depositions in accordance with a new discovery schedule. Id. at 1–2. Plaintiff seeks attorney's fees pursuant to RCFC 37(a)(5) for the costs of preparing its motion and retaking the depositions. Id. at 2.

　　　In addition to the plaintiff's motion, the court also considers plaintiff's Memorandum in Support of its Motion to Compel (Pl.'s Mem.), filed June 19, 2014, ECF No. 82-1; the exhibits attached to the Motion to Compel (Pl.'s Mot. Exs.), filed June 19,

2014, ECF No. 82-2; Plaintiff's Supplemental Brief (Pl.'s Suppl. Br.) and accompanying exhibits (Pl.'s Suppl. Br. Exs.), both filed June 20, 2014, ECF Nos. 85, 85-1; Defendant's Response to the Motion to Compel (Def.'s Resp.) and Defendant's Appendix (DA), both filed February 20, 2015, ECF Nos. 105, 105-1–105-5; Plaintiff's Reply to Defendant's Response to the Motion to Compel (Pl.'s Reply) and accompanying exhibits (Pl.'s Reply Exs.), filed March 25, 2015, ECF Nos. 109, 109-2; Defendant's Sur-Reply, filed April 24, 2015, ECF No. 114; supplemental exhibits for Defendant's Appendix (DA), filed April 27, 2015, ECF No. 115-1; and Plaintiff's Sur-Sur-Reply (Pl.'s Sur-Sur-Reply) and its accompanying exhibit (Pl.'s Sur-Sur-Reply Ex.), both filed May 21, 2015, ECF Nos. 119, 119-2.

The court also relies on the twenty-three declarations from current and former CMS employees, and a federal contractor, who searched for responsive documents. Abeln Decl., ECF No. 105-1, at A1–3; August Decl., ECF No. 105-1, at A4–9; Brauer Decl., ECF No. 105-1, at A10–14; Bucksten Decl., ECF No. 105-1, at A15–17; Lopez Cardona Decl., ECF No. 105-1, at A18–19; Clybourn Decl., ECF No. 105-1, at A20–43; Coleman Decl., ECF No. 105-1, at A44–47; Cones Decl., ECF No. 105-1, at A48–50; Creighton Decl., ECF No. 105-1, at A51–52; Farris Decl., ECF No. 105-1, at A53–55; Harper Decl., ECF No. 105-1, at A56–58; Hart Decl., ECF No. 105-1, 105-2, at A59–60; Hornsby Decl., ECF No. 105-2, at A61–70; Kennedy Decl., ECF No. 105-2, at A71–73; McCutcheon Decl., ECF No. 105-2, at A74–78; Moon Decl., ECF No. 105-2, 105-3, at A79–84; Pagan Decl., ECF No. 105-3, 105-4, at A85–91; Rice Decl., ECF No. 105-4, at A92–96; Scott Decl., ECF No. 105-4, at A97–98; Sparr Decl., ECF No. 105-4, 105-5, A99–101; Szeflinski Decl., ECF No. 105-5, at A102–104; and Tabe-Bedward Decl., ECF No. 105-5, at A105–107, all filed on February 20, 2015; Stanley Decl., filed by defendant on April 6, 2015, ECF No. 111-1; and Clybourn Suppl. Decl., filed by defendant on May 21, 2015, ECF No. 119-2, at A183–85.

For the reasons set forth herein, plaintiff's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.     Background

### A.     Breach of Contract Action

PHN is a Medicare Advantage Health Plan that provides managed care services to Medicare recipients in approximately fifteen Louisiana parishes around New Orleans. Am. Compl. ¶¶ 1, 9, Oct. 21, 2011, ECF No. 6-1.[1]  In August 2005, PHN had

---

[1] On August 26, 2011, PHN filed its complaint in this court. Compl., ECF No. 1. On October 21, 2011, PHN filed an amended complaint correcting a typographical error. See Pl.'s Mot. Amend Pleadings, ECF No. 6; Am. Compl.

approximately 35,000 Medicare Advantage enrollees. Id. ¶ 11. This amounted to roughly 70% of all beneficiaries enrolled in Medicare Advantage plans in New Orleans. Id. Between January 1, 2004 and December 31, 2006, PHN contracted with the Centers for Medicare and Medicaid Services (CMS), part of the United States Department of Health and Human Services (HHS), through two government contracts. Id. ¶¶ 7, 8. Pursuant to these contracts, CMS made monthly payments to PHN to cover the medical costs of PHN's Medicare recipients. Id. ¶ 9.

Hurricane Katrina struck the New Orleans area on August 29, 2005, and Hurricane Rita followed a few weeks later. Id. ¶¶ 10, 12. As a result of the levee failures around New Orleans and other damage caused by the hurricanes, most of the city's residents left New Orleans—and therefore PHN's service area—for extended periods of time. Id. ¶ 12.

PHN alleges that, in early September 2005 and repeatedly thereafter, CMS "unilaterally modified" the contracts in order to ensure that PHN's Medicare Advantage enrollees continued receiving medical services regardless of where they had settled and regardless of the prevailing reimbursement rates for Medicare Advantage Plans or medically-related services in those areas. Am. Compl. ¶ 13. PHN also alleges, among other things, that CMS reduced its monthly payments to PHN based on the new, temporary domiciles of PHN's re-located enrollees. Id. ¶ 14. According to PHN, CMS represented that it would reimburse PHN for the higher costs arising from defendant's unilateral contract modifications and directives, but has since refused to provide any reimbursement. Id. ¶¶ 18, 22. PHN avers that these unilateral modifications were in breach of both contracts, causing PHN damages in excess of $27 million. Id. ¶¶ 20–23.

### B. History of Discovery Disputes

On June 1, 2012, the court put in place an ill-fated discovery schedule. Order, ECF No. 20. Since that time, the parties have been entangled in numerous discovery and scheduling disputes.

On November 29, 2012, PHN served CMS with written discovery requests. Pl.'s Mem. 4. Before responding, or otherwise beginning fact discovery, defendant filed a motion for summary judgment. Def.'s Mot. Summ. J., Jan. 31, 2013, ECF No. 26. On February 19, 2013, plaintiff filed a motion pursuant to RCFC 56(d) requesting that the motion for summary judgment either be deferred or denied to allow for limited discovery. Pl.'s Mot. Defer, ECF No. 29. On March 5, 2013, plaintiff filed its first motion to compel, requesting that the court compel defendant to produce full and complete responses to plaintiff's first set of interrogatories and requests for production. Pl.'s 1st Mot. Compel 1, ECF No. 33.

On April 16, 2013, Judge George W. Miller—who was then presiding over this

matter—entered an order that stayed further briefing on defendant's motion for summary judgment and authorized plaintiff to engage in a limited, ninety-day period of discovery. See Order 1, ECF No. 46. Judge Miller permitted plaintiff to "undertake discovery in support of the allegations contained in plaintiff's amended complaint" as well as the following categories:

1. The metes and bounds of the waivers issued, and "CMS's instructions, either orally or in writing, that PHN was to provide services and/or benefits **beyond the scope and/or term** of the 1135 waivers issued and beyond the terms of the parties' contract(s);"
2. CMS's promises to reimburse PHN for the extra costs associated with providing services to displaced enrollees; and
3. The alleged oral modifications made to the contracts at issue.

Id. at 1–2. Judge Miller established that the ninety-day discovery period would begin once the parties reached an agreement regarding the discovery schedule. See id. at 2.

The parties failed to agree on a schedule, and Judge Miller intervened with a status conference. See Tr. May 28, 2013 Status Conf., June 5, 2013, ECF No. 60. The court entered an order directing defendant to serve written responses to plaintiff's interrogatories, requests for production, and requests for admission, as well as to produce sensitive and non-sensitive documents on a series of dates culminating on June 10, 2013. Order, May 28, 2013, ECF No. 53. Upon the completion of that production, the parties were directed to file a proposed schedule for the ninety-day limited discovery period. Id.

Pursuant to court order, defendant produced its written discovery responses, nearly 1,000 responsive documents, and a privilege log prior to June 10, 2013. See Joint Status Report (JSR) 1–2, June 28, 2013, ECF No. 63. However, the parties were unable to agree upon a discovery schedule and filed a JSR outlining new discovery disputes. Id. at 1–8. Plaintiff was dissatisfied with defendant's initial discovery responses and requested supplementation. Id. at 2. On June 25, 2013, the parties held a conference in which defendant explained the scope of the government's search for responsive documents. See Def.'s Resp. 6. On July 3, 2013, defendant served some supplemental discovery responses upon PHN. DA 132–35.

On July 9, 2013, plaintiff filed its second Motion to Compel, alleging that defendant failed to provide adequate responses to its discovery requests. Pl.'s 2d Mot. Compel, ECF No. 64. On November 21, 2013, Judge Francis M. Allegra—to whom the court had reassigned this case—entered an order granting-in-part and denying-in-part plaintiff's Motion to Compel. Order, ECF No. 76.

matter—entered an order that stayed further briefing on defendant's motion for summary judgment and authorized plaintiff to engage in a limited, ninety-day period of discovery. See Order 1, ECF No. 46. Judge Miller permitted plaintiff to "undertake discovery in support of the allegations contained in plaintiff's amended complaint" as well as the following categories:

1. The metes and bounds of the waivers issued, and "CMS's instructions, either orally or in writing, that PHN was to provide services and/or benefits **beyond the scope and/or term** of the 1135 waivers issued and beyond the terms of the parties' contract(s);"
2. CMS's promises to reimburse PHN for the extra costs associated with providing services to displaced enrollees; and
3. The alleged oral modifications made to the contracts at issue.

Id. at 1–2. Judge Miller established that the ninety-day discovery period would begin once the parties reached an agreement regarding the discovery schedule. See id. at 2.

The parties failed to agree on a schedule, and Judge Miller intervened with a status conference. See Tr. May 28, 2013 Status Conf., June 5, 2013, ECF No. 60. The court entered an order directing defendant to serve written responses to plaintiff's interrogatories, requests for production, and requests for admission, as well as to produce sensitive and non-sensitive documents on a series of dates culminating on June 10, 2013. Order, May 28, 2013, ECF No. 53. Upon the completion of that production, the parties were directed to file a proposed schedule for the ninety-day limited discovery period. Id.

Pursuant to court order, defendant produced its written discovery responses, nearly 1,000 responsive documents, and a privilege log prior to June 10, 2013. See Joint Status Report (JSR) 1–2, June 28, 2013, ECF No. 63. However, the parties were unable to agree upon a discovery schedule and filed a JSR outlining new discovery disputes. Id. at 1–8. Plaintiff was dissatisfied with defendant's initial discovery responses and requested supplementation. Id. at 2. On June 25, 2013, the parties held a conference in which defendant explained the scope of the government's search for responsive documents. See Def.'s Resp. 6. On July 3, 2013, defendant served some supplemental discovery responses upon PHN. DA 132–35.

On July 9, 2013, plaintiff filed its second Motion to Compel, alleging that defendant failed to provide adequate responses to its discovery requests. Pl.'s 2d Mot. Compel, ECF No. 64. On November 21, 2013, Judge Francis M. Allegra—to whom the court had reassigned this case—entered an order granting-in-part and denying-in-part plaintiff's Motion to Compel. Order, ECF No. 76.

CMS continued to discover and produce additional documents to PHN through the end of 2013. Pl.'s Mem. 7. In December 2013, PHN requested that a schedule be put in place requiring the parties to agree upon "[a] proposed list of custodians and search terms for electronic discovery pertaining to the pending Motion for Summary Judgment." JSR 1, Dec. 20, 2013, ECF No. 77. Defendant objected to this request. Id. at 3–4. On January 15, 2014, Judge Allegra set a schedule for the remainder of discovery, which anticipated the completion of document discovery by February 14, 2014, and the completion of all remaining depositions by July 30, 2014. See Order, ECF No. 78 (setting deadlines), amended by Order, May 14, 2014, ECF No. 81 (granting the parties' joint request for extensions).

### C. The Pending Discovery Dispute

On June 6, 2014, plaintiff took the deposition of Elizabeth "Ruth" Geisler, who was a former Health Insurance Specialist with CMS. See Pl.'s Mem. 8–11. Ms. Geisler testified that she would have communicated regularly with PHN by email during 2005 and 2006, when plaintiff's claims arose, and would have written numerous reports for her supervisor. Geisler Dep. 25:18–26:7, 99:8–13, Pl.'s Mot. Ex. 4, June 6, 2014, ECF No. 82-2, at pp. 49–51. Following the deposition, PHN reviewed defendant's production and found that defendant had only produced a small number of emails and reports from Ms. Geisler. Additionally, PHN found emails between PHN and CMS in its own records that were not included in the government's production. See Pl.'s Mem. 8–10.

On June 12, 2014, PHN contacted defendant's counsel to schedule a RCFC 37 conference to discuss whether a full search of Ms. Geisler's records had been conducted. Pl.'s Mot. Ex. 5, ECF No. 82-2, at pp. 65–66. On June 13, 2014, defendant's counsel requested time to review the transcript from Ms. Geisler's deposition, which she had not yet received, and to hold discussions with CMS prior to any discovery conference. Pl.'s Mot. Ex. 6, ECF No. 82-2, at p. 67. That same day, plaintiff's counsel responded by refuting the need for a deposition transcript prior to the conference because defendant's counsel was present at the deposition and did not need to know the exact testimony to discuss the government's discovery efforts. Pl.'s Mot. Ex. 7, ECF No. 82-2, at p. 68. Plaintiff offered to postpone the conference if defendant would agree to delay the upcoming deposition of Michael Fiore. Id. Defendant's counsel did not respond. Pl.'s Mem. 11.

On June 17, 2014, PHN took the deposition of Michael Fiore, a Division Director for CMS. Id. at 12. Immediately following Mr. Fiore's deposition, while still on the record, PHN attempted to hold the RCFC 37 conference to discuss the production issues. Pl.'s Mot. Ex. 8, 268:21–276:15, ECF No. 82-2, at pp. 71–77. Defendant's counsel again refused to discuss plaintiff's discovery concerns because she still did not have a copy of

Ms. Geisler's deposition transcript and had not been given notice that a conference would take place that day. Id. Plaintiff's counsel requested that the parties agree to submit a joint request to the court to defer the remaining depositions until after the RCFC 37 conference, but defendant's counsel did not respond and walked out of the room. Id. In a letter dated June 19, 2014, plaintiff's counsel again requested that the parties file a joint request to delay the remaining depositions. Pl.'s Mot. Ex. 10, ECF No. 82-2, at pp. 80–81.

With three more depositions scheduled before the July 30, 2014, deadline, PHN determined that it could not wait for defendant to be willing to confer. See Pl.'s Reply 16. On June 19, 2014, PHN filed the Motion to Compel currently before the court, along with a memorandum in support of its motion, and a motion to expedite consideration of that motion. See Pl.'s Mot.; Pl.'s Mem.; Pl.'s Mot. Expedite, ECF No. 83. Plaintiff's counsel noted that she was "continuing to attempt to resolve this issue with opposing counsel." Pl.'s Mem. 13. In its motion and subsequent briefs, plaintiff asks the court to:

(i) order the parties to work together within the next thirty days on a list of custodians, search terms, and protocols for production and have CMS reproduce all documents to PHN in native format within 60 days of the parties' agreement on a protocol;
(ii) continue the current stay with respect to the summary judgment briefing until fact discovery is complete;
(iii) order the parties to work together to reschedule the three remaining depositions;
(iv) permit plaintiff to retake the depositions of the three previously deposed individuals as it deems appropriate; and
(vi) award plaintiff attorney's fees and costs for its motion and the retaking of depositions.

Pl.'s Sur-Sur-Reply 3–4 (updating the relief sought in plaintiff's original motion).

On June 20, 2014, PHN filed a supplemental brief in support of its motion, informing the court of the parties' additional, unsuccessful efforts to resolve their issues outside of court. Pl.'s Suppl. Br. 1–2. As the parties requested during a subsequent status conference, the court stayed briefing on plaintiff's motion to allow the parties more time to resolve their discovery disputes. Order, July 11, 2014, ECF No. 89.

On October 3, 2014, the case was transferred to the undersigned. On October 27, 2014, the court held a status conference to determine how this case should proceed. See Tr. Oct. 27, 2014 Status Conf., Nov. 5, 2014, ECF No. 99. On the same day, the court issued an order setting a briefing schedule on plaintiff's motion. Order 1, ECF No. 97.

This order also required defendant to submit affidavits or declarations from individuals who performed searches for potentially responsive documents detailing their search efforts.  Id. at 2.

Briefing was concluded on plaintiff's motion on May 21, 2015.[2]  Oral argument was deemed unnecessary.

### D. Defendant's Discovery Efforts

As ordered by the court, defendant submitted twenty-three declarations from current and former CMS employees, and a federal contractor, who searched for responsive documents.  These declarations and the other exhibits and appendices attached to the parties' briefs shed some light on defendant's discovery efforts throughout this litigation.

Beginning in August of 2010, plaintiff began discussing its concerns with CMS over the agency's handling of matters in the aftermath of Hurricane Katrina.  See Pl.'s Reply 2.  On August 26, 2011, plaintiff filed its complaint in this case.  Defendant concedes that a "formal litigation hold" was not put in place until February 2012, although efforts to locate and preserve documents allegedly began in 2011.  Def.'s Sur-Reply 3, 15; see also Clybourn Suppl. Decl. ¶¶ 4, 6 (stating that defendant informed HHS of the litigation on October 28, 2011, and instructed HHS to put a litigation hold in place).  Olen Clybourn, the Deputy Director of CMS's Office of Strategic Operations & Regulatory Affairs (OSORA) stated in his declaration that CMS sent the litigation hold memorandum to certain agency offices, which in turn were supposed to distribute the litigation hold instructions to the relevant agency components.  Clybourn Suppl. Decl. ¶ 3.  On April 23, 2012, defendant sent the litigation hold memorandum to the Dallas Regional Office, which is the regional office with oversight responsibility for the contracts with PHN.  Id. ¶ 8.

Out of the twenty-three custodians who submitted declarations on defendant's search efforts, only two expressed knowledge that a litigation hold had been put in place.  See August Decl. ¶ 3 (noting that she received a document preservation request from the Business Operations Staff in February 2012, and forwarded it to CMS staff in charge of contract administration); Clybourn Suppl. Decl. ¶¶ 4–8 (explaining how the litigation hold was implemented).  A few of the declarants began their search for responsive

---

[2] In response to defendant's request to file a sur-reply, the court allowed both parties to file an additional set of responsive briefs on these issues.  See Order, Apr. 7, 2015, ECF No. 113 (setting deadlines for defendant's sur-reply and plaintiff's sur-sur-reply).

7

documents in 2012. See August Decl. ¶ 3 (first search in February 2012); Hornsby Decl. ¶ 3 (first search in September 2012); Kennedy Decl. ¶ 3 (first search in September 2012); Rice Decl. ¶ 3 (first discussed searching for relevant documents in July 2012); Stanley Decl. ¶ 3 (first search in September 2012); Szeflinski Decl. ¶ 3 (first search in "late 2011 or early 2012").

In 2013, counsel for defendant and counsel for CMS had a conference call with Danielle Moon, the former Director of the Medicare Drug and Health Plan Contract Administration Group (MCAG), and Kimberly August, Ms. Moon's Special Assistant at the time, to discuss the need for additional searches for responsive documents. Def.'s Resp. 26. On June 25, 2013, Ms. August sent an email to all MCAG divisions, instructing them to search their own files, retrieve and search the physical files for the relevant contract documents, and "revisit the files left by former employees to ensure they do not contain responsive documents." August Decl. ¶ 4. The next day, Ms. Moon sent a similar email to all CMS group directors and deputies responsible for Medicare Part C and D with instructions to search their files with a broader scope, even if they had previously searched their files. Moon Decl. ¶ 6. The email included twelve categories of documents for which to search and eight recommended search terms. Id. ¶¶ 7–8 (recommending the search terms "hurricane, Katrina, Rita, People's Health Network/People's/PHN, and Tenet Health Choices/Tenet").[3] Several of the declarants searched for responsive documents after receiving these emails, and used them as their guidance for conducting the search. See, e.g., Brauer Decl. ¶¶ 3, 4, 6; Coleman Decl. ¶¶ 3–5; McCutcheon Decl. ¶¶ 3–5; Rice Decl. ¶¶ 5–7.

On February 14, 2014, defendant provided plaintiff with a list of the custodians and search terms used in the search for responsive documents. Pl.'s Reply Ex. 2. Defendant listed nineteen custodians who helped with the search and stated that the government used a list of twenty-eight search terms "for purposes of locating electronic and hardcopy documents responsive to your discovery requests." Id.

None of the declarants stated that they used the twenty-eight word list in their searches. Instead, the declarations show great variation in the methods and key words

---

[3] At the time that the claims arose, Tenet Corporation and PHN co-owned the Tenet Choices Health Plan, which was the subject of the two contracts at issue between PHN and CMS. Later, PHN bought out Tenet Corporation's interest in the health plan. See Defendant's Appendix (DA) 137, Feb. 20, 2015, ECF No. 105-5 ("Tenet Choices Health Plan is owned as a partnership with 50% owned by the Tenet Corporation and 50% owned by Peoples Health Network."); Pagan Decl. ¶ 5 ("Effective May, 1 2009, [sic] Tenet Choices Inc., was replaced by Peoples Health Inc. d/b/a Peoples Health Network (PHN), as a result of the sale of Tenet Choices' interest to Peoples Health Inc.").

used in the searches—to the extent that the employees remembered their efforts. See, e.g., Abeln Decl. ¶¶ 4–7 (using "Katrina," "People's Health Network," "disaster," "hurricane," "Pagan," "Szeflinski," and "Geisler"); August Decl. ¶ 10 (using "Katrina" and "hurricane" in her search of the Health Plan Management System (HPMS)); Brauer Decl. ¶ 6 (using the eight search terms in Ms. Moon's June 26, 2013, email); Cones Decl. ¶ 4 (using "PHN," "Tenet Choices," "Tenet," "Medicare Advantage," "Managed care," "MAO," "MCO," "M+C," "Optional," "Mandatory," "Not mandatory," "Francis Szeflinski," "Anne Hornsby," "Jane W. Andrews," "Mary O. Abeln," "Michael S. Fiore," "Philip Doerr" and "Gary Bailey"); Farris Decl. ¶¶ 5, 7 (reading through one folder he thought was relevant for references to PHN, but not searching for Tenet); Harper Decl. ¶ 3 (using "New Orleans" and "People's Health Network"); Hornsby Decl. ¶ 4 (using "Tenet," "Katrina," "Rita," "H1961," and "H1901"); Kennedy Decl. ¶ 3 (using "PHN," "People's," and "Tenet").

Defendant argues that some files that plaintiff seeks may have been lawfully destroyed prior to the commencement of litigation in this case. Def.'s Resp. 30. In his first declaration, Mr. Clybourn described the retention policy applicable to the documents in this case, as contained in the CMS Records Schedule. Clybourn Decl. ¶¶ 3–6. Mr. Clybourn explained that the documents at issue here—including emails, reports, and HPMS marketing materials—fall within the category of "Administrative Office Files" and can be destroyed two years after the end of the calendar year in which the document was dated. Id. ¶¶ 4, 5; see also Def.'s Resp. 29–30. Because most of the responsive documents in this case date back to 2005 and 2006, it is possible that they were destroyed in accordance with the retention policy before this case was filed in 2011. Clybourn Decl. ¶ 6. Mr. Clybourn noted that a document subject to destruction under the retention policy, however, may not actually have been destroyed.[4] Id. ¶ 7.

The parties place particular emphasis on the files maintained by Ms. Geisler, who was CMS's plan manager for PHN during the relevant time period. Ms. Geisler retired from CMS on December 31, 2011, four months after this case was filed but before the litigation hold was in place. Geisler Dep. 15:7–10. Upon her retirement, her personal drives were destroyed. See Def.'s Sur-Reply 1–2; see also Hart Decl. ¶ 5 (noting that employee files were typically retained for ninety days after the employee's separation, and adding that the search for Ms. Geisler's files occurred after that ninety-day period had lapsed).

Defendant alleges that it still may have produced all responsive documents that

---

[4] Mr. Clybourn also noted that agency documents related to Hurricane Katrina were subject to a records freeze put in place by the White House in 2005, and therefore should not have been destroyed. Clybourn Decl. ¶¶ 9–12.

belonged to Ms. Geisler. See Def.'s Resp. 33. Ms. Geisler was required to save all official documents to the shared drive maintained by the Dallas Regional Office. Pagan Decl. ¶¶ 6, 15; Clybourn Decl. ¶ 7. Ms. Geisler stated in her deposition that she saved documents, including emails, to a shared drive and filed hardcopies in paper files. Geisler Dep. 21:2–13, 22:6–12, 23:18–22. Defendant states that it searched the Dallas Regional Office's shared drive and central filing cabinet, as well as the HPMS system, and therefore has already captured any relevant files that belonged to Ms. Geisler. Def.'s Resp. 32, 34; see also Pagan Decl. ¶¶ 4–7 (stating that he searched the shared G drive for the Dallas Regional Office and Ms. Geisler's paper files); August Decl. ¶ 10 (stating that she searched HPMS). Defendant alleges that the destruction of Ms. Geisler's files was "inadvertent" and that there is no reason to suspect that Ms. Geisler's files contained any information relevant to PHN's claims. Def.'s Sur-Reply 2.

## II. Legal Standard

RCFC 37 provides that "a party may move for an order compelling disclosure or discovery." RCFC 37(a)(1). In acting on a motion to compel discovery, the court exercises broad discretion, guided by the court's rules. See Schism v. United States, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc); Florsheim Shoe Co. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984); Hitkansut L.L.C. v. United States, 119 Fed. Cl. 40, 45 (2014).

Generally, discovery rules "are to be accorded a broad and liberal treatment." Hickman v. Taylor, 329 U.S. 495, 507 (1947); see also Afro–Lecon, Inc. v. United States, 820 F.2d 1198, 1203 (Fed. Cir. 1987) ("The scope of civil discovery is broad and requires nearly total mutual disclosure of each party's evidence prior to trial."). However, discovery has "ultimate and necessary boundaries." Hickman, 329 U.S. at 507. RCFC 26(b)(1) allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," subject to the limitations imposed by RCFC 26(b)(2)(C). Under RCFC 26(b)(2)(C), the court must limit discovery if it finds that:

(i)      the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
(ii)     the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
(iii)    the burden or expense of the proposed discovery outweighs its likely benefit . . . .

RCFC 26(b)(2)(C). The court must balance these considerations and "be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to

develop and prepare the case." Heat & Control Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 1983 amendment); Petro-Hunt, L.L.C. v. United States, 114 Fed. Cl. 143, 144 (2013); see also Hickman, 329 U.S. at 507 (asserting that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation").

The party moving to compel discovery bears the burden of proving that the opposing party's answers are incomplete. Jenkins v. United States, 90 Fed. Cl. 585, 588 (2009); Anaheim Gardens v. United States, No. 93-655, 2008 WL 2043240, at *3 (Fed. Cl. Feb. 29, 2008); Equal Rights Ctr. v. Post Props., Inc., 246 F.R.D. 29, 32 (D.D.C. 2007).

### III.  Discussion

Plaintiff argues that defendant's production in response to plaintiff's requests for production was deficient, and that defendant should be required to redo its searches with a more rigorous search protocol agreed upon by the parties. Pl.'s Mem. 14–15. Plaintiff believes that defendant's response should include, inter alia, information on other Medicare Advantage Organizations (MAOs) that had dealings with CMS following Hurricane Katrina. Id. at 15. Plaintiff further requests that the court order the parties to reschedule the remaining depositions and allow plaintiff to retake any of the three completed depositions. Pl.'s Reply 20. Finally, plaintiff asks for attorney's fees to cover the cost of prosecuting this motion and retaking any depositions. Pl.'s Mem. 15–16.

Defendant opposes the motion to compel, arguing that plaintiff did not confer in good faith with defendant prior to filing its motion, in violation of RCFC 37(a)(1). Def.'s Resp. 14–23. Defendant further argues that plaintiff has failed to demonstrate that defendant's production was inadequate and has requested documents regarding other MAOs that fall outside of the scope of limited discovery. Id. at 23–37. Finally, defendant argues that attorney's fees are not warranted in this case. Id. at 37–39.

The court now proceeds to determine whether plaintiff's motion to compel should be granted, and how this case should proceed. For the reasons discussed below, the court **GRANTS-IN-PART** and **DENIES-IN-PART** plaintiff's third motion to compel.

### A.     Plaintiff complied with the RCFC 37(a)(1) requirement to confer in good faith prior to filing its motion to compel.

RCFC 37(a)(1) provides:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

RCFC 37(a)(1).[5]

In accordance with this rule, plaintiff certified in its motion to compel that "PHN conferred and/or attempted to confer with counsel for CMS in an effort to obtain the discovery requested or otherwise resolve this discovery dispute without court intervention but has been unable to resolve the issues." Pl.'s Mot. 2. Defendant argues that, contrary to the certification, plaintiff failed to confer in good faith prior to filing its motion, and therefore the motion should be denied. Def.'s Resp. 14–23.

The court finds that plaintiff did make a good faith attempt to confer with defendant prior to filing its motion, in accordance with RCFC 37. Even before the depositions began, plaintiff questioned the sufficiency of defendant's production and requested more information from defendant regarding its searches. See JSR 1, Dec. 20, 2013, ECF No. 77. Ms. Geisler's deposition on June 6, 2014, reinforced plaintiff's doubts about the adequacy of defendant's production. On June 12, 2014, plaintiff contacted defendant to outline its concerns regarding Ms. Geisler's files and to schedule a discovery conference. Pl.'s Mot. Ex. 5. After plaintiff made several requests, it became clear that defendant would not discuss the issues until it had a certified transcript of Ms. Geisler's deposition. The parties had scheduled depositions to be conducted on June 17, 2014 (Michael Fiore), June 24, 2014 (Jennifer Messersmith), and June 26, 2014 (Marty Abeln). Pl.'s Suppl. Br. Ex. 2. Although plaintiff specifically asked for the deposition of Mr. Fiore to be postponed, Pl.'s Mot. Ex. 7, defendant did not respond to the request and the deposition was held as scheduled, see Pl.'s Mot. Ex. 8. With two more depositions scheduled the next week, and the end of fact discovery set for July 30, 2014, plaintiff made a reasonable decision to bring the dispute to the court's attention.

Plaintiff appropriately took into consideration the court's preference for motions to compel to be filed in advance of discovery deadlines. Courts have found that a motion to

---

[5] RCFC 37 is virtually identical to Rule 37 of the Federal Rules of Civil Procedure and interpretation of the federal rule is persuasive in interpreting the portions of RCFC 37 that are relevant to this opinion. See RCFC 2002 Rules Comm. Note at 1 ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). Compare RCFC 37, with Fed. R. Civ. P. 37.

12

compel "is timely when 'filed sufficiently in advance of the discovery deadline . . . to allow it to be heard by [the] court, and if granted, to allow the compelled discovery to be produced prior to the deadline.'" Hitkansut, 119 Fed. Cl. at 49 (quoting Days Inn Worldwide, Inc. v. Sonia Invs., 237 F.R.D. 395, 398 (N.D. Tex. 2006)). RCFC 37 does not specify a time limit for filing a motion to compel, but "[i]f the moving party has unduly delayed, the court may conclude that the motion is untimely." AG-Innovations, Inc. v. United States, 82 Fed. Cl. 69, 79 (2008) (quoting 8A Charles Alan Wright et al., Federal Practice & Procedure § 2285 (2d ed. 1994)). When assessing the timeliness of discovery motions, courts have looked to the deadline for the completion of discovery. Id.; Hitkansut, 119 Fed. Cl. at 49.

While ideally the parties would have had substantive, detailed discussions regarding all of plaintiff's claims prior to the filing of the motion to compel, the court recognizes that plaintiff wished to file the motion in advance of the discovery deadline, and to allow the court time to resolve the dispute before additional depositions were completed.

Defendant argues that counsel for PHN should have "devote[d] their energies to rescheduling the remaining depositions and, if necessary, seeking an enlargement to the discovery schedule rather than filing a premature motion to compel." Def.'s Resp. 23. Plaintiff did request that the deposition of Mr. Fiore be postponed, but defendant failed to respond. Pl.'s Mot. Ex. 7.[6]

Additionally, any harm created by plaintiff's filing of its motion prior to holding a RCFC 37 conference was mitigated by the subsequent opportunities for the parties to discuss the discovery issues. On June 20, 2014, the court stayed briefing on plaintiff's motion to compel to allow the parties to "work to resolve their discovery issue." Order, ECF No. 86. On July 11, 2014, that stay was continued at the parties' request to allow "additional time to resolve their discovery dispute." Order, ECF No. 89; see also Order, Aug. 8, 2014, ECF No. 91 (staying the case). Briefing on the motion to compel continued only after it was clear that the parties were unable to reach any agreement. See Order, Oct. 27, 2014, ECF No. 97.[7] Contrary to defendant's assertions, RCFC 37 does

---

[6] Plaintiff also requested that defendant agree to extend the discovery schedule on June 17, 2014, when plaintiff demanded that defendant conduct a discovery conference on the record following Mr. Fiore's deposition. See Pl.'s Mot. Ex. 8, at 275–76. However, the court does not condone the method in which plaintiff made this request.

[7] This order implicitly lifted the stay in this case by putting in place a briefing schedule. To the extent that the court has not yet expressly stated it, the stay imposed by the previous judge on August 8, 2014, has been lifted as of October 27, 2014.

13

not forbid the parties from working together after a motion to compel has been filed.  See Def.'s Resp. 18.  It is perfectly consistent with this court's rules for parties to discuss and reach agreements on ongoing disputes, particularly after the court has issued an order staying briefing on a motion to compel for that very reason.

Any argument by defendant that restarting the discussions would have led to an efficient, consensual resolution of these discovery issues seems disingenuous given the history of this dispute.  The parties have had ample opportunities to reach an agreement and have failed.  The court will not negate the work of the parties over the last fourteen months by requiring the parties, once again, to discuss these issues until they reach an impasse, and then start over with another motion to compel.

The court finds that plaintiff did make a good faith attempt to discuss its concerns with defendant, pursuant to RCFC 37(a)(1), and therefore is entitled to consideration of its motion to compel.

### B. Plaintiff has demonstrated that defendant's discovery efforts were inconsistent and inadequate.

The court turns to plaintiff's allegations that defendant failed to conduct a thorough search for responsive documents and ultimately produced a deficient response to its discovery requests.[8]

A proper search for discoverable documents requires careful planning, oversight, and monitoring by the party's counsel.  See, e.g., William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co., 256 F.R.D. 134, 135 (S.D.N.Y. 2009) ("[S]election of the appropriate search and information retrieval technique requires careful advance planning by persons qualified to design effective search methodology."); Zubulake v. UBS Warburg L.L.C., 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("[I]t is not sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched. Counsel is under a continuing duty to ensure preservation.").  Defendant must be able to "explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the

---

[8] Plaintiff also accuses defendant of spoliation due to its delayed and insufficient litigation hold and the destruction of files, such as those belonging to Ms. Geisler, after the litigation commenced.  Pl.'s Reply 16–18.  However, since plaintiff does not pursue spoliation remedies at this point, the court will not inquire into this possibility now.  See Pl.'s Sur-Sur-Reply 3 ("To be clear, this Motion to Compel does **not** seek spoliation remedies.").

task, and show that it was properly implemented." William A. Gross, 256 F.R.D. at 135 (citing Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 260, 262 (D. Md. May 29, 2008)).

The court finds that defendant did not put into place a systematic, reliable plan to find and produce all relevant documents in this case. First, it appears that there was little oversight by defendant's counsel over the search efforts of the CMS employees. The declarations indicate that many of the custodians relied upon an email they received in June 2013 for their search instructions. That email listed categories of documents and recommended eight search terms for the custodians to use in their searches. The decision regarding which exact search terms to use was left up to the individual custodians, who understandably varied greatly as to the terms they actually selected. Several of the custodians did use the eight search terms listed in the email, but none of them seemed to use the twenty-eight search terms that defendant had represented to plaintiff were used in the search for responsive documents. Additionally, the custodians were not required to keep any record of the search terms they used and exactly what records they searched. Nor did the declarants mention any meaningful oversight over their individual search efforts.

The record does not allow the court to conclude that a thorough and reliable search was conducted. It is possible that defendant's searches did uncover all of the existing, relevant documents in CMS's possession. The court also recognizes that some relevant documents may have been destroyed in accordance with CMS's document retention program, and the court clearly cannot order defendant to produce documents that no longer exist. See Cormack v. United States, 117 Fed. Cl. 392, 408 (2014) ("The court cannot compel [a party] to produce documents that it insists do not exist."); Lumbermens Mut. Cas. v. United States, 70 Fed. Cl. 94, 97 (2006) ("[O]rdering the Government to produce documents that it has represented either no longer exist, or are impossible to locate, would be a futile act."). However, the court finds that plaintiff's request to collaborate with defendant to identify records' custodians and a comprehensive set of search protocols is reasonable and warranted.

Plaintiff's request for an order that the parties work together to develop new search parameters is hereby **GRANTED**. The parties shall work together to develop a list of custodians, search protocols, and search terms by September 21, 2015. The search terms shall be reasonably calculated to generate relevant documents and may be tailored appropriately for each custodian. The parties shall endeavor to avoid repeating searches that have already been conducted. As soon as the parties agree on the search protocol to be used for a certain custodian, defendant is encouraged to commence the search, even if the parties continue to discuss the appropriate protocol for other custodians.

On September 21, 2015, defendant shall commence any searches that have not already begun.  Defendant shall maintain a record of which custodians performed searches, what search terms they used, what records they searched, and how many responsive documents were found.  On November 23, 2015, defendant shall produce to the plaintiff the record of the searches and any relevant documents discovered in the searches that have not previously been produced.  Such documents shall be in native format.

### C.    Plaintiff is not entitled to discovery relating to other MAOs.

On November 29, 2012, plaintiff served CMS with written discovery requests including, in pertinent part, Request for Production No. 27, which requested "all documents that refer to or relate to how and what other Medicare Advantage Plans or Organizations and/or Medicare+Choice Plans or Organizations and/or M+C Plans or Organizations were paid, re-paid, and/or reimbursed by you following Hurricanes Katrina and Rita. . . ."  Pl.'s Mem. 5.  On June 3, 2013, defendant served PHN with its responses and objections to its first discovery requests, in which it objected to Request for Production No. 27 because it went "beyond the scope of the Court's April 16, 2013 order."  DA 140.

In its pending motion, plaintiff again expresses the need for "communications between CMS personnel and other MAOs."  Pl.'s Mem. 15.  The court finds that this discovery request is not relevant to the resolution of defendant's motion for summary judgment and falls outside of the scope of the limited discovery permitted by this court's previous orders.

Judge Miller's April 16, 2013 order set specific limitations for the discovery in this case.  Order, ECF No. 46.  The order allowed plaintiff to undertake discovery in support of its claims that "CMS unilaterally modified its contract with **plaintiff**."  Id. at 1 (emphasis added).  The order also permitted plaintiff to conduct discovery on three other categories of instructions, promises, and assertions made by CMS to PHN.  Id. at 1–2.  The order did not mention any other MAOs or any issues that could turn on CMS's communications with other MAOs.

Plaintiff has not put forth any satisfactory argument in its briefs to justify a modification of the discovery limits established in the April 16, 2013 order.  Plaintiff also fails to explain how the treatment of other MAOs is relevant to its claims that CMS breached its contracts with PHN.  See RCFC 26(b)(1) (allowing discovery on "any nonprivileged matter that is relevant to any party's claim or defense"); Oenga v. United States, 78 Fed. Cl. 427, 431 (2007) ("Relevance to a dispute constitutes the basic standard governing the discoverability of requested material.").

Accordingly, plaintiff's request for discovery relating to other MAOs is hereby **DENIED**.

### D. The parties shall reschedule depositions as necessary.

In its motion to compel, plaintiff requests that the court "order the parties to work together to reschedule the currently scheduled depositions of Jennifer Messersmith, Marty Abeln, and Jonathan Blum after the discovery issues are resolved." Pl.'s Mot. 2. The court finds that it is not necessary to order such relief at this time. Despite the acrimonious history of this case, the court presumes that the parties can work together in good faith to schedule the remaining depositions. See Def.'s Resp. 18 (noting that on June 19, 2014, "the Government agreed to PHN's request to postpone the upcoming depositions and to seek enlargement of the July 30, 2014 discovery deadline").

Plaintiff also requests that the court "permit PHN to retake the depositions of the three witnesses deposed to date . . . in light of CMS' failure to make a complete document production." Pl.'s Mot. 2. This request is premature. At this point, the court does not know what new documents, if any, will be found in defendant's renewed search efforts and whether there will be a sound justification for retaking the depositions.

Accordingly, plaintiff's requests for a court order requiring the parties to reschedule the remaining depositions and permitting the plaintiff to retake the three completed depositions are hereby **DENIED**. After defendant's production is complete, the parties shall confer and attempt to reach an agreement over which depositions, if any, need to be retaken. If the parties cannot consent to a plan for retaking the depositions, plaintiff shall file a motion for leave to retake the depositions. The motion shall include the name(s) of the witness(es) that plaintiff believes must be deposed for a second time, identify what new documents or information justify the retaking of the deposition(s), and define the topics to be covered in such deposition(s).[9]

---

[9] Documents that are already in PHN's possession, even if they were not produced by defendant, will not be considered new documents that would justify the retaking of a deposition. See Pl.'s Mem. 7–8 (alleging that PHN "was unable to fully question Mr. Pagan" on certain events because defendant did not produce documents that PHN later found in its own records).

Case 1:11-cv-00541-PEC   Document 120   Filed 08/21/15   Page 18 of 20

**E.  Plaintiff is not entitled to attorney's fees for the costs of prosecuting this motion, but may move again for such fees if it must retake depositions.**

In its motion, plaintiff moves for the award of attorney's fees for the costs incurred in prosecuting its motion to compel and for the costs of having to retake depositions. RCFC 37(a)(5) allows the court to award attorney's fees to the prevailing party after ruling on a motion to compel discovery. If the motion is granted, the award of attorney's fees is governed by RCFC 37(a)(5)(A), if the motion is denied, by RCFC 37(a)(5)(B), and if the motion is granted-in-part and denied-in-part, by RCFC 37(a)(5)(C).

Here, the court has granted-in-part and denied-in-part plaintiff's motion. RCFC 37(a)(5)(C) thus provides that the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." RCFC 37 (a)(5)(C). This standard allows the court to exercise discretion in determining if attorney's fees are warranted. See Confidential Informant 59-05071 v. United States, 121 Fed. Cl. 36, 49 (2015) ("[U]nder RCFC 37(a)(5)(C) . . . the award of expenses is discretionary."). Both parties addressed the award of attorney's fees in their briefs, and thus, have had an opportunity to be heard.

The court finds that attorney's fees for the costs of bringing this motion are not warranted at this time. While plaintiff has successfully demonstrated that defendant's searches were deficient, it is unclear if defendant failed to produce a significant number of discoverable documents. First, defendant should repeat its searches and produce any newly found documents. Then, the parties or the court, if necessary, shall resolve the question of whether the completed depositions should be retaken. At that point, plaintiff may renew its motion for attorney's fees pursuant to RCFC 37(a)(5)(C). Plaintiff shall keep in mind that it carries the burden of proving that its request for attorney's fees is reasonable. See Confidential Informant 59-05071, 121 Fed. Cl. at 50 (citing Kister v. District of Columbia, 229 F.R.D. 326, 329 (D.D.C. 2005)); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."); American Federal Bank, FSB v. United States, 74 Fed. Cl. 208, 220 (2006) ("Detailed billing records are an essential starting point for an award of costs and expenses.").

Accordingly, plaintiff's request for attorney's fees is **DENIED**, without prejudice.

## IV.     Conclusion

This motion to compel arises in a case that has been beleaguered by frequent delays and the failure of the parties to cooperate with one another.  The court reminds the parties of their obligation to act in good faith in all of their dealings with each other and the court.  The court expects the parties to exhibit professionalism and cooperation in order to facilitate the resolution of this dispute in an efficient manner.

For the foregoing reasons, plaintiff's motion to compel is hereby **GRANTED-IN-PART** and **DENIED-IN-PART**.  Plaintiff's request for a court order compelling defendant to redo its previous searches is **GRANTED**.  Plaintiff's request for information regarding other MAOs is **DENIED**.  Plaintiff's request for an order requiring the parties to reschedule the remaining depositions and retake the completed depositions is premature and is **DENIED**.  Plaintiff's request for attorney's fees is **DENIED**, without prejudice.

The court adopts the following schedule for the resolution of fact discovery in this case:

| Deadline | Description |
| --- | --- |
| Sept. 21, 2015 | The parties shall agree to a list of records that shall be searched, the custodians responsible for such search, the search terms that they shall use, and any other appropriate instructions for the performance of their search. |
| Nov. 23, 2015 | Defendant shall complete all searches as agreed to by the parties and shall produce any newly discovered documents to plaintiff in native format, and the record of the searches. |
| Dec. 9, 2015 | The parties shall agree to a schedule for the remaining depositions and reschedule any completed depositions that must be retaken.  If the parties cannot reach an agreement on which depositions should be repeated, plaintiff shall file a motion listing the name(s) of the witness(es) that plaintiff believes must be deposed for a second time, identifying what |

| Deadline | Description |
|---|---|
|  | new documents or information justify the retaking of the deposition(s), and defining the topics to be covered in such deposition(s). |
| Feb. 1, 2016 | Fact discovery shall be completed. |
| Feb. 16, 2016 | The parties shall file a joint status report regarding how this case should proceed. |

**IT IS SO ORDERED.**

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge